## No. 696.

THE STATE EX REL. O. J. FORSTALL VS. THE BOARD OF LIQUIDATORS.

The act of 1875 requiring a final decree of this court as to validity of certain " doubtful" bonds, enumerated therein, before the Board of Liquidators will be permitted to fund them, does not require that there should be a final decree on every individual bond of a certain issue.

A final decree of this court affirming the validity of *one* of the bonds of a certain issue (under ban), removes the taint from that issue, and puts all of its bonds on the same footing with the other bonds of the State that have not been legislatively attainted. But this restoration to legitimacy of those bonds does not give their holders the right to compel the Board of Liquidators, by mandamus, to fund them.

The Board of Liquidators have a certain discretionary power as to the funding of all State bonds, and warrants, and hence can not be compelled to fund them by the summary process of mandamus.

APPEAL from the Fifth District Court, parish of Orleans.  *Rogers, J.*

*W. W. Howe, T. A. Flanagan,* and *G. H. Braughn,* for relator.

*H. N. Ogden,* Attorney General, and *J. C. Egan,* Assistant Attorney General, for defendant.

The opinion of the court was delivered by

MANNING, C. J.  The relator alleges that he holds, with full power to fund, five hundred and seventy-nine bonds of the State for five hundred dollars each, with their coupons, issued under the act of February 25th, 1870, and eighty-eight bonds of the State for one thousand dollars each, with coupons, issued under the Act of March 26th, 1867, all of which are known and commonly designated as Levee bonds, and are valid obligations of the State, and were issued for a valuable consideration.  He avers that these bonds have been thus declared by the Supreme Court of this State, as is required by the Act of May 17th 1875, and he has therefore the right to have these bonds exchanged for the Consolidated Bonds of the State, the required judgment of the Supreme Court having been pronounced in the suit whereto the present relator was a party, and which, with the opinion of the court accompanying the decree, is published in the 27th Annual Reports of this court, page 577. He further avers that the Board of Liquidation refuse to fund the bonds presented by him for that purpose, notwithstanding this final decree of the Supreme Court, and he prayed and obtained a writ of mandamus to compel the funding.

Respondent, answering the rule to shew cause why the mandamus should not be made peremptory, denies that these bonds are valid obligations of the State, or that they were issued in conformity to law and for a valid consideration, and alleges that the Board of Liquidation is prohibited from funding the bonds by the Act of 1875 until every one of

them has been declared valid by the Supreme Court, and legally issued, and that no such decree has ever been obtained upon these bonds.

The lower court refused to make the mandamus peremptory, and the relator appeals.

The main question for our decision is, whether the legislative requirement, contained in the act of May 17th 1875, imposes upon the Board of Liquidation the duty of refusing to fund every bond until it has been verified by a final decree of this court as legal and valid, and that it was issued in conformity to law, and not in violation of the Federal or State constitutions, and had a valid consideration; or whether such decree, rendered upon any bond, has relation to all others of the same issue or series, and is therefore in effect that final decree which that Act makes the duty of the Board to require.

In May 1875 the present relator applied for a mandamus to compel the funding of certain enumerated bonds issued under the Acts of February 25th 1870, and March 26th 1867, alleging that the Board of Liquidation had refused to fund them, and further averring that the act of 1875 was unconstitutional, and hence the requirement above recited was null. In that suit he prayed that that act be declared unconstitutional, and that the Board be commanded to fund the bonds mentioned in his petition.

The Supreme Court pronounced the act of 1875 constitutional, thereby affirming that the duty of the Board was to refuse to fund the bonds of relator until they had been declared legal and valid obligations of the State by a final decree of that court, and then proceeded to make that decree *quoad* the bonds of relator, but restricting its operation by the formal expression, "we desire to be distinctly understood that we are expresing no opinion upon the validity of any bonds except those before us and in the hands of the relator." State ex rel. Forstall v. Board of Liquidation, 27 Annual, 582.

Manifestly this is not the final decree required by the Act of 1875 which can be invoked by the relator as the authority to the Board to fund the bonds now presented. The decree repels such use of it in express language. Apparently anticipating that the relator might so construe the language of the court as to justify him in demanding the funding of all other bonds of same series or issue as those included in that decree, care was taken to inform him and the Board that such construction was condemned beforehand.

The relator then is the relator now. His prayer now is that the Board be commanded to fund "each and all of the above-described bonds as belonging to those issues covered by the judgment of the Supreme Court rendered in the previous suit." We have seen that the judgment of the Supreme Court expressly excluded from its operation these, and

all other bonds, except those embraced in that suit. The Board had not before them such final decree as the Act of 1875 requires, and their refusal to fund the bonds presented by the relator in this suit was proper.

In the trial of the issue below, evidence was received, without objection from the Attorney General, of the legality and validity of the bonds included in this suit. The bonds were offered in evidence, and the originals are brought up before us. We are thus enabled to pass upon the questions of their legality, validity, and good consideration, and to ascertain whether they have the features or qualities declared indispensable by the act of 1875, and we find that they are legal and valid obligations of this State, that they were issued in strict conformity to law, and not in violation of the constitution of the United States or of this State, and for a valuable consideration.

We might stop here, and leave still open the question whether a final decree of this court upon one bond was sufficient warrant to the Board to fund all bonds of the same issue. But in a matter of such large public concern, where the interests and public credit of the State are in some sort involved, we have not thought it improper to accept the invitation of the law officers of the Government to define with more precision what is that 'final decree' which the Act of 1875 requires every holder of 'questioned and doubtful' bonds to obtain before he can compel the Board to fund them.

It is not necessary that every holder of every bond, or the holder of a large number of bonds of same issue, should obtain a judgment of this court upon them before they can be funded, if there has been a final decree rendered upon other bonds of the same issue. But on the other hand, such decree upon bonds of a certain issue does not of itself validate the whole of that issue, in such manner and with such effect, as to deprive the Board of Liquidation of the power to exercise any discretion whatever in relation to the funding of any bonds that may be presented to them.

The propriety and necessity of this construction will be apparent upon a brief statement of the legislation touching it. The funding Act (Acts 1874, p. 39,) constituted a Board through whose action the bonded debt of the State should be consolidated, and directed that the holders of bonds or warrants should present them to this Board for exchange. If a majority of the Board should reject any bonds or warrants thus presented, the holder of them might apply by petition to the proper court for relief, and if final judgment should be rendered in his favor, it should then be the duty of the Board to fund his bonds or warrants.

Another act was passed in the next year, (Acts 1875, p. 110,) which contained a list of bonds that the General Assembly pronounced 'questioned and doubtful,' and reversed the duty of the Board as to them.

None in that *liste des proscrits* could be funded by the Board until the holders of them had obtained a final decree of this court attesting them, as in that act directed. The language of the act is—that the following issue of bonds and warrants, so far as the same may be now outstanding, are declared questioned and doubtful. We held last winter (Exchange Bank vs. Board of Liquidation,) not yet reported, that the holder of bonds included in that list could not compel the Board by mandamus to fund them until he was fortified by a decree to that end.

A decree upon one or more of the same issue removes the whole of that issue from the list of questioned and doubtful bonds, but they instantly fall in the condition of all other bonds that were never on that list. The Board have the right to refuse to fund any and all bonds and warrants. Its duty is to refuse to fund all that come to them tainted, without regard to the fact whether they are in the questioned list or not. The funding act contemplates a refusal, and provides a remedy by petition to the proper court for relief. The supplemental act makes it the duty of the Board *not* to fund certain issues. A decree upon one bond of either of those issues relieves the Board of the obligation not to fund others of the same issue, but it does not impose upon the Board the obligation to fund all of that issue. As to all other bonds of the same issue as those declared valid by this decree, the Board has the same discretion that it has touching bonds that were never in the questioned list, and it must exercise that discretion.

We are very warmly urged to go further, and to rule that the Board must fund, without discretion, all bonds of the same issue, if any one bond of that issue has received this court's *imprimatur*. We are told that such ruling is required to sustain the public credit, and that without it, a cloud will rest upon certain classes of public securities. We are unable to perceive how we increase the denseness of that shadow thrown over the list of questioned bonds by the Legislature. On the 17th of May 1875 that body in solemn form declared, there were bonds of the State to the amount of fourteen million three hundred and twenty thousand five hundred dollars which were of doubtful validity. This was a legislative warning by the State to the Board of Liquidation, and to her Judges, to permit no bonds of the proscribed list to be funded without scrutiny, nor until they had been declared legal and valid obligations of the State, and that they had been issued in strict conformity to law, and not in violation of the constitution of this State or of the United States, and for a valuable consideration.

That there were some bonds in that list that had these requisites is manifest from the decrees heretofore rendered, and this decree now rendered, to that effect. That there were other bonds in that list that had not those requisites, is inferrible from the legislative declaration which

put them under ban. We cannot deprive the Board of Liquidation of the power of scrutinizing each separate bond and warrant, and accepting it for funding, or rejecting it, as the act of 1874 empowered it to do. And the fact that we do this is the surest warrant to the holders of the genuine bonds that the public faith is to be guarded and preserved. Therefore

It is ordered, adjudged, and decreed that the judgment of the lower court is affirmed, which refuses to make the mandamus obtained by relator, peremptory, because of the decree of this court rendered in suit No. 556. And it is further decreed that the bonds set forth in the relator's petition are now declared to be legal and valid obligations of the State of Louisiana, and they were issued in strict conformity to law, and not in violation of the constitution of the United States or of this State, and for a valid consideration. It is further ordered that the relator pay the costs of both courts.